UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON MAYOR MARTINEZ,<br><br>  Petitioner,<br><br>  v.<br><br>PAMELA BONDI, KRISTI NOEM, AND TODD LYONS,<br><br>  Respondents. | No. 1:25-cv-01633-EFB (HC)<br><br>ORDER |

  Petitioner Martinez, represented by counsel, is a noncitizen in the custody of Immigrations and Customs Enforcement ("ICE") seeking habeas corpus relief pursuant to 28 U.S.C. § 2241. Pending before the court is petitioner's Motion for Temporary Restraining Order, ECF No. 18, filed on December 12, 2025, to which respondents have filed an opposition. ECF No. 20. Upon review of the parties' filings, the court finds argument unnecessary and, for the reasons set forth herein, grants petitioner's motion.

**BACKGROUND AND PROCEDURAL HISTORY**

  The following facts are undisputed. Petitioner is a citizen of Cuba who entered the United States in approximately May 1980. ECF No. 8 at 2; ECF No. 18 at 1. In August 1999, removal proceedings were initiated against him and, the following month, an Immigration Judge ordered him removed to Cuba. ECF No. 8 at 2; ECF No. 18 at 1. In December 1999, however, a review panel reversed this removal order, finding that petitioner met the standards in the Cuban Review Plan, and released petitioner. ECF No. 8 at 3; ECF No. 18 at 1.

1    On September 10, 2025, ICE served petitioner a warrant of removal and notice of
2 custody redetermination and petitioner was remanded into ICE custody. ECF No. 8 at 3; ECF
3 No. 18 at 1. ICE requested that Cuba accept petitioner, which request Cuba denied. ECF No. 8 at
4 3; ECF No. 18 at 1. On October 20, 2025, ICE served petitioner notice of third country removal,
5 and two days later, ICE transferred petitioner to the Florence Detention Center for removal to
6 Mexico. ECF No. 8 at 3; ECF No. 18 at 1. On October 24, 2025, petitioner claimed fear of
7 removal to Mexico and ICE returned him to the Golden State Annex in McFarland, California.
8 ECF No. 8 at 3; ECF No. 18 at 1. On November 7, 2025, an asylum officer interviewed
9 petitioner to assess his claim of fear of removal to Mexico and denied the claim, finding that
10 petitioner had not proven it was more likely than not he would be tortured in Mexico. ECF No. 8
11 at 3; ECF No. 18 at 1. ICE then resumed the process of trying to remove petitioner to Mexico.
12 ECF No. 8 at 3; ECF No. 18 at 1.

13   Petitioner initiated the instant action in propria persona on November 24, 2025, which
14 included a request for injunctive relief. ECF No. 1. Concurrent with his petition, petitioner filed
15 a motion for appointment of counsel and request to proceed in forma pauperis. ECF Nos. 2, 3.
16 The same day, the district judge issued an order construing petitioner's request for injunctive
17 relief as a request for preliminary injunction and set a briefing schedule for same. ECF No. 5.
18 On December 2, 2025, respondents filed an opposition to the request for preliminary injunction
19 and return to the petition. ECF No. 8. On December 4, 2025, on the consent of the parties, the
20 district judge assigned the matter to the undersigned for all purposes and vacated the pending
21 briefing schedule. ECF No. 13.

22   On December 10, 2025, the undersigned granted petitioner's motion to proceed in forma
23 pauperis and granted his motion for appointment of counsel. ECF No. 14. In the same order, the
24 court set a new deadline for petitioner's reply to respondents' opposition to the motion for
25 preliminary injunction and ordered that, "[i]n order to ensure this court's jurisdiction to resolve
26 the pending § 2241 petition, respondents shall not transfer petitioner to another detention center
27 outside of this judicial district, pending further order of the court." *Id*. The next day, respondents
28 filed a response to this order, representing, upon the declaration of DHS / ICE deportation officer

2

1  Refugia Guerra, that petitioner had been transferred out of the Golden State Annex on December
2  6, 2025, and booked into the Florence Service Processing Facility in Florence, Arizona on
3  December 8, 2025.  ECF No. 15 at 2.  At the time of that filing, respondents represented that,
4  "Petitioner is currently detained at that the Florence Service Processing Facility, in preparation
5  for his removal to Mexico . . . ICE is currently in the process of removing Petitioner to Mexico,
6  which should occur in the reasonably foreseeable future." *Id*.

7  The following day, on December 12, 2025, petitioner filed the instant motion for
8  temporary restraining order.  ECF No. 18.  The same day, the undersigned ordered respondents
9  were temporarily enjoined from moving or transferring petitioner from the Florence Service
10  Processing Center while the court considers the motion for temporary restraining order and
11  ordered respondents to file a response to the motion for temporary restraining order.  ECF No. 19.
12  Respondents filed an opposition to the motion for temporary restraining on December 15, 2025,
13  supported by a declaration from DHS / ICE Assistant Field Director Joanna Bayardo, who
14  declared that, due to a miscommunication, petitioner had been transported back to the Golden
15  State Annex on December 13, 2025, where he remains detained currently.  ECF Nos. 20, 20-1 ¶¶
16  5-8.

## LEGAL STANDARD

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially similar."  See *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001).  To obtain preliminary injunctive relief, the plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).  Where, as here, the Government is the opposing party to a request for temporary restraining order, the third and fourth factors "merge" in the court's analysis.  *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).  The first factor, "[l]ikelihood of success on the merits[,] is a threshold inquiry and is the most important factor."  *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968

F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

## DISCUSSION

In his petition, petitioner raises three claims for relief. In his first claim, he alleges that his continued detention in immigration custody violates the Due Process Clause of the Fifth Amendment, because there is no significant likelihood that he will be removed in the reasonably foreseeable future. ECF No. 1 at 13-14. In his second claim, he alleges that ICE's current procedures regarding removal of persons to third countries, to which he is subject, violate the Fifth Amendment, 8 U.S.C. § 1231, Convention Against Torture, Implementing Regulations, and the Administrative Procedure Act. *Id*. at 14-15. In his third claim, he alleges that third-country punitive banishment would violate his rights under the Fifth and Eighth Amendments. *Id*. at 15-16. He seeks a temporary restraining order on the basis that he is likely to succeed on the merits of his first and second claims. ECF No. 18 at 3-5. Respondents oppose petitioner's motion on the grounds that he has not met his burden on his first claim and, as to his second claim, the process petitioner received was adequate. ECF No. 20 at 3-4. For the reasons explained below, the court grants petitioner's motion.

**A. Likelihood of Success on the Merits**

Petitioner has demonstrated a likelihood of success on both of his claims for relief, militating towards the issuance of his requested temporary restraining order.

**1. Claim One**

In petitioner's first claim for relief, he alleges that his continued detention violates his Fifth Amendment due process rights. ECF No. 1 at 13-14. The undersigned finds petitioner has shown a likelihood of success on this claim.

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United

States." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." *Id.* "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" *Id.* at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) (citing *Zadvydas*, 533 U.S. at 684-86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. Rather,

> [a]fter [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. Here, the parties agree that petitioner is detained pursuant to 8 U.S.C. § 1231(a)(6) and that he has been detained beyond the presumptively reasonable six-month detention period. ECF No. 8 at 1, 4; ECF No. 18 at 5.

Respondents argue that petitioner has not met his burden to shown that there is no

5

1 significant likelihood of removal in the reasonably foreseeable future. ECF No. 20 at 3; ECF No.
2 8 at 4. Numerous courts have held, however, that the burden-shifting scheme of *Zadvydas* is only
3 applicable to those noncitizens who had been detained and never released following a final order
4 of removal. *Zadvydas*, 533 U.S. at 701. Where, as here, petitioner was issued a final order of
5 removal, detained, and subsequently released and then redetained, "it is [ICE's] burden to show a
6 significant likelihood that the alien may be removed" pursuant to 8 C.F.R. § 241.13. *Escalante v.*
7 *Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *see also*
8 *Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025)
9 ("[T]he regulations at issue in this case place the burden on ICE to first establish changed
10 circumstances that make removal significantly likely in the reasonably foreseeable future.");
11 *Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025)
12 ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood
13 that the alien may be removed in the reasonably foreseeable future."); *Nguyen*, 788 F. Supp. 3d at
14 150; *Vu v. Noem*, No. 1:25-CV-01366-KES-SKO (HC), 2025 WL 3114341, at *5 (E.D. Cal. Nov.
15 6, 2025). Here, respondents have made no showing that there is a significant likelihood that
16 petitioner will be removed to Cuba, Mexico, or anywhere else, aside from bare assurances that
17 "ICE is currently in the process of removing Petitioner to Mexico." ECF No. 15 at 2; *see* ECF
18 No. 20; ECF No. 8 at 4-5. On the record before the court at this stage, therefore, petitioner has
19 shown a likelihood of success in this claim.

20     **2. Claim Two**

21 In his second claim for relief, petitioner alleges that ICE's current procedures for removal
22 of noncitizens to third countries violate the Due Process Clause of the Fifth Amendment, as well
23 as the Immigration and Nationality Act, the Convention Against Torture, and implementing
24 regulations. ECF No. 1 at 14. Specifically, petitioner alleges that ICE's current procedures fail to
25 give the detained person sufficient notice and a meaningful opportunity to present asylum and
26 withholding of removal claims prior to ordering removal to a third country. *Id*. at 14-15. In his
27 motion for temporary restraining order, he presents this as a facial and as-applied challenge to the
28 ICE policy to which he is subject. ECF No. 18 at 3. He requests as relief that respondents be

enjoined from removing him to a third country unless respondents provide petitioner and his counsel a minimum of ten (10) days to raise a fear-based claim for protection prior to removal; and, if petitioner demonstrates reasonable fear of removal to the third country, respondents be ordered to reopen petitioner's removal proceedings. ECF No. 18 at 7. If petitioner is not found to have demonstrated a reasonable fear of removal to the third country, "[r]espondents must provide a meaningful opportunity, and a minimum of fifteen (15) days for Petitioner to seek reopening of his immigration proceedings." *Id.*

The court finds that petitioner has shown a likelihood of success on this claim. Current DHS regulations provide that when an immigration judge issues a final removal order, he or she shall identify the country or countries to which the alien may be removed. 8 C.F.R. 1240.12(d). If, however, DHS is unable to remove the alien to one of the identified countries, DHS may remove the alien to an alternative country; this process is referred to as "third-country removals." *Id*. DHS's discretion to remove an alien to a third country is bounded by a prohibition that noncitizens may not be removed to countries where their "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion," or where "it is more likely than not that [the noncitizen] would be tortured if removed to the proposed country of removal." 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16.

On July 9, 2025, ICE Acting Director Todd M. Lyons issued a memorandum addressing third-country removals. ECF No. 1 at 3-4; *G.A.A. v. Chestnut*, No. 1:25-CV-01102-EPG-HC, 2025 WL 3251316, at *5-6 (E.D. Cal. Nov. 21, 2025). In pertinent part, it states that "If the United States has received diplomatic assurances from the country of removal that aliens removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures." *G.A.A.*, 2025 WL 3251316, at *5-6. In all other cases,

> ICE must comply with the following procedures:
> • An ERO officer will serve on the alien the attached Notice of Removal. The notice includes the intended country of removal and will be read to the alien in a language he or she understands.

- ERO will <u>not</u> affirmatively ask whether the alien is afraid of being removed to the country of removal.
- ERO will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal. In exigent circumstances, ERO may execute a removal order six (6) or more hours after service of the Notice of Removal as long as the alien is provided reasonable means and opportunity to speak with an attorney prior to removal.
- Any determination to execute a removal order under exigent circumstances less than 24 hours following service of the Notice of Removal must be approved by the DHS General Counsel, or the Principal Legal Advisor where the DHS General Counsel is not available.
- If the alien does not affirmatively state a fear of persecution or torture if removed to the country of removal listed on the Notice of Removal within 24 hours, ERO may proceed with removal to the country identified on the notice. ERO should check all systems for motions as close in time as possible to removal.
- If the alien does affirmatively state a fear if removed to the country of removal listed on the Notice of Removal, ERO will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection under section 241(b)(3) of the INA and the Convention Against Torture (CAT). USCIS will generally screen the alien within 24 hours of referral.
- USCIS will determine whether the alien would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal.
- If USCIS determines that the alien has not met this standard, the alien will be removed.
- If USCIS determines that the alien has met this standard and the alien was not previously in proceedings before the immigration court, USCIS will refer the matter to the immigration court for further proceedings. In cases where the alien was previously in proceedings before the immigration court, USCIS will notify the referring immigration officer of its finding, and the immigration officer will inform ICE. In such cases, ERO will alert their local Office of the Principal Legal Advisor (OPLA) Field Location to file a motion to reopen with the immigration court or the Board of Immigration Appeals, as appropriate, for further proceedings for the sole purpose of determining eligibility for protection under section 241(b)(3) of the INA and CAT for the country of removal. Alternatively, ICE may choose to designate another country for removal.

*G.A.A.*, 2025 WL 3251316, at *5-6; *see also Esmail v. Noem*, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030589, at *2 (C.D. Cal. Sept. 26, 2025); ECF No. 1 at 3-4.

Petitioner has shown a likelihood of success on the merits of his claim that these procedures violate due process and, to the extent he is and will be subject to them, he will suffer a violation of his due process rights under the Fifth Amendment. "Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing *Lacsina Pangilinan v. Holder*, 568 F.3d 708,

709 (9th Cir. 2009)). Specifically, due process requires that a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F.Supp.3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976)). The decision must be made after "a full and fair hearing [by] an impartial decisionmaker, and evaluation of the merits of his or her particular claim," to give the noncitizen a "meaningful opportunity to be heard." *Aden*, 409 F. Supp. 3d at 1010 (citing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir. 2001)). DHS has an affirmative duty to notify "the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts." *Id*. at 1019; *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). Finally, due process requires an opportunity for the noncitizen to move to reopen his removal proceedings, after having received an adverse agency decision on the withholding claim. *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 390 (D. Mass. 2025) (citing *Marbury v. Madison*, 5 U.S. 137, 163, 1 Cranch 137, 2 L.Ed. 60 (1803)).

Numerous courts have found that ICE's policy for effectuating third-country removals, as set forth in the July 9, 2025 Memorandum, on its face violates the requirements of due process as guaranteed in the Fifth Amendment. For one cohort of noncitizens subject to third-country removal—those being removed to nations from which the United States has received certain diplomatic assurances—the policy mandates that the noncitizen is entitled to no process whatsoever. *See G.A.A.*, 2025 WL 3251316, at *5. This plainly offends the Fifth Amendment's due process clause. *See Khouzam v. Att'y Gen. of U.S.*, 549 F.3d 235, 259 (3d Cir. 2008); *D.V.D.*, 778 F. Supp. 3d at 390; *Esmail v. Noem*, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030589, at *7 (C.D. Cal. Sept. 26, 2025). For the second cohort implicated by the policy—those being removed to nations from which no relevant diplomatic assurances have been provided—the policy provides some process to the noncitizen, but it is nevertheless defective. For this cohort, the policy first violates their due process rights by "[f]ailing to notify individuals who are subject to deportation that they have the right to apply . . . for withholding of deportation to the country to which they will be deported." *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999); *Nguyen v.*

9

*Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025); *see also Azzo v. Noem*, No. 3:25-CV-03122-RBM-BJW, 2025 WL 3535208, at *7 (S.D. Cal. Dec. 10, 2025); *Vu v. Noem*, No. 1:25-CV-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025). For this group, the policy also violates their due process rights by providing that ICE "will not affirmatively ask whether the alien is afraid of being removed to that country," which "forces the noncitizen to assert a right he may not know that he has." *Esmail*, 2025 WL 3030589, at *7 (quoting *Andriasian*, 180 F.3d at 1041); *see also Aden,* 409 F. Supp. 3d at 1021 (W.D. Wash. 2019); *Azzo*, 2025 WL 3535208, at *7. Finally, the policy provides that the noncitizen will be removed upon a finding that he or she would not be persecuted on a statutorily protected ground or tortured in the country of removal; this provision violates due process by failing to provide the noncitizen an opportunity to move to reopen his case, upon receipt of this adverse withholding decision, before removal. *See Aden,* 409 F. Supp. 3d at 1021; *D.V.D.*, 778 F. Supp. 3d at 390.

      Respondent argues that, irrespective of defects ICE's policy may evince abstractly, petitioner was afforded all the process he was due. ECF No. 20 at 3-4. The undisputed record shows that petitioner was given notice on October 20, 2025 that ICE intended to remove him to Mexico. ECF No. 20 at 3; ECF No. 8-5 at 1. This notice was read to him in Spanish. *Id*. Four days later, petitioner claimed fear of removal to Mexico and, on November 7, 2025, "an asylum officer interviewed Petitioner to assess the fear claim." ECF No. 8-1 ¶¶ 19-20; ECF No. 20 at 4. The officer found petitioner had not proven that it was not more likely than not he would be tortured in Mexico and resumed the process to remove him to Mexico. ECF No. 8-1 ¶¶ 20-21; ECF No. 20 at 4. This process, however, does not accord with the due process requirements set forth by the Supreme Court and Court of Appeals. Respondent's failure to notify petitioner that he had "the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported" alone violated petitioner's "constitutional right to due process." *Andriasian,* 180 F.3d at 1041; *see also Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *7 (W.D. Wash. Nov. 17, 2025) (citing *Andriasian*, 180 F.3d at 1041); *see* ECF No. 8-5. Moreover, "[w]ere ICE to designate a different country of removal, its policy would *require* ICE officers to repeat that same violation." *Id*.; *see G.A.A.*, 2025 WL 3251316, at *5-6

1   ("ERO will not affirmatively ask whether the alien is afraid of being removed to the country of
2   removal."). Additionally, petitioner has made an adequate showing that respondents' policy, as it
3   has been applied to him, further violates his due process rights by failing to allow him to re-open
4   his removal proceedings before respondents endeavored to remove him to Mexico. *See Aden*,
5   409 F. Supp. 3d at 1011; *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025).

6       For all of these reasons, petitioner has shown a likelihood of success on his second claim
7   for relief.

### B. Irreparable Harm

9   Petitioner will suffer irreparable harm in the absence of a temporary restraining order,
10  which respondents do not dispute. *See* ECF No. 20 at 3-4; *see also* ECF No. 8 at 4-5. "It is well
11  established that the deprivation of constitutional rights 'unquestionably constitutes irreparable
12  injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427
13  U.S. 347, 373 (1976)). Moreover, "[t]he Ninth Circuit has recognized 'irreparable harms
14  imposed on anyone subject to immigration detention' including 'the economic burdens imposed
15  on detainees and their families as a result of detention.'" *Hernandez v. Sessions*, 872 F.3d 976,
16  995 (9th Cir. 2017); *see also Rodriguez*, 779 F. Supp. 3d at 1262. Petitioner has thus established
17  irreparable harm.

### C. Balance of the Harms and Public Interest

19  The final two *Winter* factors merge when the government is the nonmoving party, *Baird*,
20  81 F.4th at 1040, and respondents do not dispute that these factors weigh in favor of the issuance
21  of a temporary restraining order. *See* ECF No. 20 at 3-4. Broadly, "it is always in the public
22  interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002
23  (internal quotations and citations omitted). "The government also cannot reasonably assert that it
24  is harmed in any legally cognizable sense by being enjoined from constitutional violations."
25  *Baird*, 81 F.4th at 1042 (internal quotations and citations omitted). Moreover, specific to the
26  harms and public interest implicated by unlawful immigration detention, the analysis of the
27  *Pinchi* court is persuasive here:

11

> "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) (quoting *Padilla v. Immigration & Customs Enforcement*, 953 F.3d 1134, 1147–48 (9th Cir. 2020)) ("It is always in the public interest to prevent the violation of a party's constitutional rights."); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district have concluded under similar circumstances, the potential harm to Ms. Garro Pinchi is significant—she faces immediate and potentially prolonged ICE detention, putting her family's financial survival and her already precarious health at risk—while the potential harm to the government is minimal. The only potential injury the government faces is a short delay in detaining Ms. Garro Pinchi if it ultimately demonstrates to a neutral decisionmaker by clear and convincing evidence that her detention is necessary to prevent danger to the community or flight. *See Jorge M. F*, 2021 WL 783561; *Diaz*, 2025 WL 1676854. The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with ... a conflict between minimally costly procedures and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Singh*, 2025 WL 1918679, at *9 (quoting *Hernandez*, 872 F.3d at 996) (cleaned up).

*Pinchi*, 792 F.Supp.3d at 1037-38.  Here, respondent does not dispute that these factors favor the issuance of a temporary restraining order.  *See generally* ECF No. 20.  Thus, the court concludes that the equities and public interest weigh in favor of petitioner.

**D. Bond**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified).  Because "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda*, 753 F.2d at 727, the court finds that no security is required here.

**CONCLUSION AND ORDER**

Accordingly, petitioner's motion for temporary restraining order, ECF No. 18, is GRANTED. Respondents are ORDERED to immediately release petitioner from custody.

Respondents are ENJOINED AND RESTRAINED from effectuating Petitioner's third country removal unless Respondents adhere to the following procedures:

1. Provide Petitioner and his counsel a minimum of ten (10) days to raise a fear-based claim for protection prior to removal;

2. If Petitioner demonstrates reasonable fear of removal to the third country, Respondents must move to reopen Petitioner's removal proceedings;

3. If Petitioner is not found to have demonstrated a reasonable fear of removal to the third country, Respondents must provide a meaningful opportunity, and a minimum of fifteen (15) days for Petitioner to seek reopening of his immigration proceedings.

Petitioner may file a reply to respondents' opposition to the request for preliminary injunction no later than fourteen (14) days from the date of this order. The parties may stipulate to extend this briefing schedule. This temporary restraining order, which is issued following briefing by both parties, shall remain in effect pending the Court's ruling on the motion for preliminary injunction.

Because the preliminary injunctive relief sought is identical to the ultimate relief sought in the habeas petition, judicial economy would be served by "the court . . . advance[ing] the trial on the merits and consolidat[ing] it with the hearing" on a motion for preliminary injunction. Fed. R. Civ. P. 65(a)(2); *see Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*, 4 F.4th 747, 759 (9th Cir. 2021). Accordingly, IT IS HEREBY ORDERED that no later than fourteen (14) days from the date of this order, the parties shall indicate: (1) whether they are amenable to the Court advancing the merits determination pursuant to Rule 65(a)(2); and (2) whether additional briefing on the merits is required.

Dated: December 16, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE